IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| ANTHONY ALLEN BONWELL,<br><br>      Petitioner,<br>vs.<br><br>DORA SCHRIRO, et al.,<br><br>      Respondents. | No.   CV 06-473-TUC-DCB(BPV)<br><br>**REPORT AND RECOMMENDATION** |

On September 7, 2006, Anthony Allen Bonwell, ("Petitioner"), an inmate confined under Department of Correction custody in the Arizona State Prison Complex in Tucson, Arizona, filed a pro se Petition for Writ of Habeas Corpus by a Person in State Custody, pursuant to Title 28, U.S.C. § 2254 ("Petition"). (Doc. No. 1.)[1] Respondents filed an Answer ("Answer") to the Petition on December 21, 2006, with exhibits A through LL attached. (Doc. No. 9.) Counsel was appointed for Petitioner, and counsel filed a supplemental reply on November 30, 2007.  (Doc. No. 21.)

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation.

For the reasons discussed below, the Magistrate Judge recommends that the District Court enter an order dismissing the Petition.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

    **A.     Trial Court Proceedings**

On September 16, 1994, the State filed a felony criminal complaint in Pima County Superior Court CR-46933, charging Petitioner and four co-defendants (Jose

---

[1] "Doc. No." refers to documents in this Court's file.

1 Villasenor, Eduardo Contreras, Demetrius Moore, and James Ramirez) with committing
2 the following 19 crimes on or about June 30, 1994: one count of first-degree murder
3 (Count 1); one count of burglary in the first degree (count 2); seven counts of
4 kidnapping (Counts 3, 5, 7, 9, 11, 13, and 15); seven counts of aggravated assault with
5 a deadly weapon or dangerous instrument (Counts 4, 6, 8, 10, 12, 14 and 16); one count
6 of attempted armed robbery (Count 17); and two counts of conspiracy (Counts 18 and
7 19). (Ex. A.)[2]

8     On October 6, 1994, Petitioner entered a plea agreement to plead guilty to
9 Amended Count 1, manslaughter, a class 2 felony, with a statutory sentencing range
10 between 3 years' (substantially mitigated sentence) to 12.5 years' (substantially
11 aggravated sentence) imprisonment. (Ex. B. at 1)   In exchange for the agreement,
12 Petitioner agreed to give truthful statements and testimony concerning the murder of
13 Adalberto Perez Soto and the participation of his co-defendants in the planning and
14 commission of the offense. (Id. at 2.) The agreement contained terms allowing the
15 State to declare the agreement null and void and prosecute Petitioner on the original
16 charges if Petitioner should fail to make himself available when called upon to give
17 statements and testimony; and terms that would allow the State to withdraw from the
18 plea agreement if Petitioner were charged with or arrested for any new crimes. (Id. at
19 2-3.) The State also agreed to dismiss the remaining charges as part of the agreement.
20 (Id. at 2.)

21     On November 28, 1995, the first day of trial of co-defendants Villasenor and
22 Moore, the State moved for a warrant to be issued for Petitioner, and the trial court,
23 having been notified that Petitioner had not kept in contact with his attorney and was

---

[2] "Ex." refers to the corresponding Exhibit contained in Respondents attached Exhibits found at Doc. No. 10. "R.T." refers to the court reporter's transcripts.

- 2 -

1 not available for trial, issued the warrant. (Ex. C.)  Petitioner was arrested in Seattle,
2 Washington, while in a stolen car. (Petition: Exhibit I: R.T. 3/8/96, at 16.)[3]

3       On January 9, 1996, Petitioner was charged by the Grand Jurors of Pima County,
4 Arizona, in Pima County Superior Court CR-51736 with the 19 counts originally
5 charged in CR 46933. (Ex. D.)  The State filed allegations of dangerous nature of the
6 offense, alleging that several of the counts were felonies involving the use of deadly or
7 dangerous weapons (two handguns, a tire iron and a club), and the intentional or
8 knowingly infliction of serious physical injury. (Ex. D.)

9       On February 8, 1996, Petitioner entered a plea agreement to plead guilty to
10 Amended Count 1, second degree murder, a class 1 felony, with a statutory sentencing
11 range between 10 years' (minimum sentence) to 22 years' (maximum sentence)
12 imprisonment. (Ex. E. at 1)   The State also agreed to dismiss the remaining charges
13 as part of the agreement. (Id. at 2.)

14       On that same date, the trial court vacated the plea in CR-46933 and dismissed
15 CR-46933 as to Petitioner. (Ex. F.)  The trial court conducted a change of plea
16 colloquy with Petitioner.  (Ex. G: R.T. 2/8/96.)   Although Petitioner's counsel
17 mentioned an initial concern he had that Petitioner was unavailable to testify in the co-
18 defendant's trial because he was in custody, he informed the court that after research
19 into "issues involving jeopardy as well as the obligations and the language included in
20 the special terms with regard to the plea that was previously entered. ... [he was]
21 convinced that the State has lawful authority to revoke the original plea agreement...
22 and have given [Petitioner] that advice in terms of his operating and entering into this

---

[3] Respondents' Exhibit H, presumably intended to be the sentencing transcript from March 8, 1996, is a duplicate of Respondents' Exhibit G, the change of plea transcript from February 8, 1996.  The Court therefore cites to the sentencing transcript found at Petitioner's Exhibit I.

- 3 -

1  plea agreement..." (Ex. G: R.T. 2/8/96 at 6.)  The trial court accepted Petitioner's plea
2  of guilty to second degree murder.  (Id. at 19.)

3        On March 8, 1996, the trial court[4] sentenced Petitioner to a slightly mitigated
4  term of 14 years' imprisonment.  (Petition, Exhibit I: R.T. 3/8/96, at 17-18.)

5        **B.**    **First Petition for Post-Conviction Relief**

6        On April 17, 1996, Petitioner filed his first notice of post-conviction relief in
7  both CR-51736 and CR-46933.  (Ex. I.)  The trial court appointed the Pima County
8  Legal Defender to represent Petitioner in the Rule 32 proceeding.  (Ex. J.)  On January
9  21, 1997, Deputy Legal Defender Lois Yankowski filed a Notice of Review with the
10 trial court, noting that she had reviewed the record, and was unable to identify any
11 tenable issue which would form the basis for proceeding with a Rule 32 petition for
12 post-conviction relief, and requested that the trial court grant an extension of time to
13 allow Petitioner to file a pro per petition with the court.  (Ex. K.)  The trial court
14 granted Petitioner until April 1, 1997 to file his petition.  (Ex. L.)  On April 24, 1997,
15 the trial court, noting that Petitioner had not filed any further paperwork, denied the
16 request for Rule 32 relief.  (Ex. M.)

17       **C.**    **Motion to Correct Sentencing Memorandum**

18       On June 25, 1997, Petitioner filed a Motion for Court Order to Correct
19 Sentencing Memorandum/Paperwork Due to Errors Therein.  (Ex. N.)  Petitioner's
20 motion challenged the consecutive community supervision provision of his sentence.
21 (Id.)  On July 3, 1997, the trial court considered the motion, and vacated the community
22 supervision portion of the sentence.  (Ex. O.)

23       **D.  Second Motion to Correct Sentencing Error**

24       On September 23, 1998, Petitioner filed another motion to correct his sentence,
25 arguing that the trial court failed to give him credit for 675 days of pre-sentence

---

27     [4]    Petitioner was sentenced by the Honorable Raner C. Collins.

28     - 4 -

incarceration. (Ex. P.) On October 27, 1998, the trial court denied Petitioner's motion on the ground that he had been incarcerated for only 65 days before sentencing. (Ex. Q.)

### E. Third Motion to Correct Sentencing Error and Second Petition for Post-Conviction Relief

On March 27, 2000, Petitioner filed a third motion to correct his sentence, arguing again that he should have received 675 days of pre-sentence incarceration. (Ex. R.) The Honorable Lina Rodriguez reviewed the motion this time, and initially granted the motion to "reflect [the sentencing judge's] intent that the defendant be given credit for 675 days served prior to his sentencing on March 8, 1996." (Ex. S.)  After the computation was called into question by the Arizona Department of Corrections, however, Judge Rodriguez issued a minute entry ordering further briefing. (Ex. T.)[5] On September 29, 2000, Judge Rodriguez issued a minute entry reflecting the receipt of a letter asking the Court to "take off" seven years from his sentence, and also noted that the matter was still pending with regard to counsel assigned to brief the issue of how many days of pre-sentence incarceration should be accredited towards Petitioner's 14-year sentence. (Ex. U.)

On October 9, 2000, trial counsel informed Judge Rodriguez that he had "concluded [his] investigation and [did] not find any merit to filing a Rule 32 Petition..." (Ex. V.)  Petitioner also informed the court that he had advised Petitioner of the same, and was therefore not intending to file a Rule 32 petition in the matter. (Id.)

---

[5] Exhibit T was incorrectly electronically docketed. The correct copy was attached to the Court's copy of the exhibits and is attached to this Report and Recommendation for clarification, as it is already a part of the record of the state court proceedings.

- 5 -

1    Thereafter, on October 24, 2000, Petitioner filed a second petition for
2 post-conviction relief in CR-51736. (Ex. W.)  Petitioner argued that (1) Petitioner
3 should have been sentenced for manslaughter, pursuant to the first plea agreement,
4 because the State allegedly engaged in prosecutorial vindictiveness when it withdrew
5 from the first plea agreement, based upon Petitioner's breach thereof; (2) the trial court
6 considered inaccurate information at sentencing; and (3) Petitioner should be accorded
7 credit for 675 days of pre-sentence incarceration.  (Ex. W.)

8    On December 20, 2000, the court vacated its earlier order granting Petitioner
9 credit for 675 days per-sentence incarceration and reinstated the original judge's
10 computation of 65 days.  (Ex. X.)  The trial court, noting that the petition for post-
11 conviction relief was Petitioner's first actual petition and raised issues unrelated to the
12 motion to correct sentence, referred the petition to the Honorable Patricia Escher for
13 resolution, as Judge Collins was no longer available.  (Ex. Q.)

### F. Third Petition for Post-Conviction Relief

15    On April 12, 2001, Petitioner, through counsel, filed a petition for post-
16 conviction relief in CR-51736.  (Ex. Y.)  The petition raised the following claims: (1)
17 the trial court improperly considered Petitioner's breach of the plea agreement in CR-
18 46933 as an aggravating circumstance; (2) consideration of such aggravating
19 circumstance was not harmless; and (3) Petitioner was entitled to reinstatement of his
20 first plea agreement because the State had engaged in prosecutorial vindictiveness and
21 violated Petitioner's Double Jeopardy rights by withdrawing from the first plea-
22 agreement.  (Ex. Y.)

23    On December 13, 2001, the court ruled on the petition, considering the argument
24 of ineffective assistance of counsel "implicit in the petition" and treated the petition as
25 the first petition raising an ineffectiveness claim. (Ex. AA.)  The court concluded, first,
26 that Petitioner was precluded from raising any issues as to the validity of the State's
27 withdrawal from the first plea agreement, having failed to raise it prior to his acceptance

1  of the second plea agreement and his plea of guilty pursuant thereto. (Id. at 2.) The
2  court also found that the "record could not be more clear that petitioner knowingly,
3  intelligently, voluntarily and expressly waived any claim regarding the State's
4  withdrawal from the first agreement." (Id. at 3.) The court found no factual basis in
5  the record to support Petitioner's argument that the trial court improperly considered
6  Petitioner's breach of the plea agreement as an aggravating circumstance. (Id. at 3-4.)
7  The trial court further found that, even if it had considered the breach, it did not amount
8  to double punishment. (Id. at 3.)

9        On February 7, 2002, Petitioner, through counsel, filed a petition for review with
10 the Arizona Court of Appeals. (Ex. BB.)   On November 19, 2002, in a memorandum
11 decision, the court of appeals granted review, but denied relief. (Ex. CC.) The court
12 of appeals clarified that the trial court did not find Petitioner waived his double
13 jeopardy rights; instead, it found he had "knowingly, intelligently, voluntarily and
14 expressly waived any claim regarding the State's withdrawal from the first plea
15 agreement."  The appellate decision emphasized that in his petition for review,
16 Petitioner repeatedly failed to distinguish between challenging the state's right to
17 withdraw from the first plea agreement and asserting a violation of his double jeopardy
18 rights, noting the issues are not synonymous. (Ex. CC, at 4.) The appeals court found
19 that by failing to challenge the state's withdrawal from the first plea agreement at the
20 second change of plea proceeding, even after being questioned on this issue, Petitioner
21 waived his right to claim the state had improperly withdrawn from that agreement.
22 Moreover, the court of appeals noted that the waiver occurred in CR-46933, the case
23 that was dismissed; the post-conviction relief proceeding discussed in the appeal,
24 however, was filed under CR-51736. As such, the court of appeals held that Judge
25 Escher lacked jurisdiction to grant Petitioner post-conviction relief on his claim of error
26 in CR-46933. (Ex. CC.) The court of appeals ultimately concluded that the trial court
27 lacked jurisdiction to grant Petitioner relief in a post-conviction relief proceeding filed
28

under CR-51736 for error asserted in the State's withdrawal from the plea agreement in CR-46933.

On December 19, 2002, Petitioner, through counsel, filed a petition for review with the Arizona Supreme Court. (Ex. DD.) The supreme court denied review without comment on May 28, 2003. (Ex. EE.)

### G.  Fourth Petition for Post-Conviction Relief

Petitioner, through counsel, filed a notice of post-conviction relief in CR-46933 on August 29, 2003, requesting appointment of counsel. (Ex. FF.)  Judge Escher appointed the Legal Defender's Office. (Ex. II, at 4.)  Counsel from the Legal Defender's Office withdrew because an ineffective assistance of counsel claim was to be alleged on the previous Rule 32 attorney. (Id.)  The trial court appointed contract counsel to the case, and counsel filed a notice of review stating that he was unable to identify any colorable claims. (Id.) Subsequently, Petitioner filed a *pro per* petition for post-conviction relief in CR-46933 on January 6, 2004. (Ex. GG.)  Petitioner filed a pro per amended petition with the assistance of the Legal Defender's office on May 3, 2004. (Ex. HH.) Petitioner asserted that (1) he was unconstitutionally subject to double jeopardy; (2) his double jeopardy claims are not precluded; and (3) his first Rule 32 counsel was ineffective. (Id.)

On August 24, 2004, the trial court denied the amended petition. (Ex. II.)  On November 1, 2004, Petitioner filed a petition for review with the Arizona Court of Appeals. (Ex. JJ.)  On November 22, 2005, the court of appeals granted review, but denied relief. (Ex. KK.) No motion for reconsideration or petition for review was filed with the Arizona Supreme Court, and, accordingly, the court of appeals issued its mandate on December 30, 2005.  (Ex. LL.)

- 8 -

**H. Federal Habeas**

Petitioner filed this present petition for habeas corpus in the District Court on September 1, 2006[6]. (Doc. No. 1.) Petitioner alleges that his due process rights and the prohibition against double jeopardy were violated. (Id.)

On December 21, 2006, Petitioner filed an Answer and accompanying exhibits A though LL. (Doc. No. 9.) Petitioner filed a pro se Reply (Doc. No. 11), and attorney Howard Wine, specially appearing, filed a motion for appointment of counsel (Doc No. 10) on January 24, 2007. Thereafter, counsel for Petitioner was appointed, and a supplemental reply filed. (Doc. No. 21.)

**II.  DISCUSSION**

**A.  Standard of Review**

Because Petitioner filed his petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA"). *See* 28 U.S.C. § 2244.

**B.  Timeliness**

A one year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. 28 U.S.C. § 2244(d)(1). Under the AEDPA, a state prisoner must generally file a petition for writ of habeas corpus within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review [.]" 28 U.S.C. § 2244(d)(1)(A). "The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment

---

[6]  Giving Petitioner the benefit of the doubt, and given Respondents' concession, (Answer, at 17), based on the execution date of the signature line of the Petition, the Magistrate Judge finds that Petitioner delivered the Petition for filing on September 1,2006, and thus utilizes that date as the filing

- 9 -

1 or claim is pending shall not be counted toward any period of limitation[.]" 28 U.S.C.
2 § 2244(d)(2).

### C. Analysis

Respondents submit that the Petition exceeded the 1-year statute of limitations by nearly 3 years.[7] The Magistrate Judge agrees and recommends that the District Court dismiss the Petition as untimely for the following reasons.

Petitioner's conviction and sentence were based upon a guilty plea, and thus, under Arizona law, Petitioner's post-conviction relief proceedings were "of-right." *See* Rule 32.1, Az.R.Cr.P. Accordingly, AEDPA's statute of limitations did not begin to run until the conclusion of Petitioner's Rule 32 "of-right" proceedings. *See Summers v. Schriro*, 481 F.3d 710, 711 (9th Cir. 2007) (concluding that "[b]ecause a Rule 32 of-right proceeding is a form of direct review, AEDPA's one-year statute of limitations does not begin to run until the conclusion of the Rule 32 of-right proceeding and review of that proceeding, or until the expiration of the time for seeking such proceeding or review."); *see also* 28 U.S.C. § 2244(d)(a)(A) (stating that a judgment becomes final at the later of either the conclusion of direct review or the expiration of the time for seeking such review). Petitioner's conviction and sentence became final on May 27, 1997, thirty (30) days after the trail court dismissed Petitioner's petition for post-conviction relief, when Petitioner's opportunity to petition the Arizona Court of Appeals for review had expired[8]. *See* Rule 32.9(c), Ariz.R.Crim.P. (stating that

---

[7] Respondents contend that the Petition exceeds the limitation period by 2 years and 307 days. Although the Magistrate Judge's exact calculations differ from those submitted by Respondents, the difference is inconsequential. The basis for the difference is that Respondents Answer was filed prior to the Ninth Circuit's decision in *Summers*, 481 F.3d 710, discussed *supra*.

[8] Because the thirty day deadline for seeking review of the trial court's decision would have expired on May 24, 1997, a Saturday, the period

- 10 -

defendant has 30 days after the filing of a decision to file a petition for review by the Arizona Court of Appeals). Although direct review is not normally complete until the time for filing a writ of certiorari to the United States Supreme Court has expired, *see Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999), certiorari can only be sought following a decision or denial of discretionary review by the state court of last resort, *i.e.* the Arizona Supreme Court. *See* SupCt.R.13. Accordingly, Petitioner was required to file his petition for writ of habeas corpus within one year of the date his convictions became final, *i.e.*, one year from May 27, 1997, absent statutory tolling, or May 27, 1998.

Petitioner did not file the instant Petition until September 7, 2006. Petitioner does not argue and this Court does not find that he is entitled to any equitable tolling. Petitioner's counsel states that, having thoroughly reviewed the record, he is unable to advance a non-frivolous argument that Petitioner's claim is not time-barred or that the 1-year statute of limitations is equitably tolled in his case. Thus, the Petition is untimely by over eight years unless statutory tolling applies and results in a tolling of the limitations period for a sufficient length of time to bring the Habeas Petition within the one-year limitations period.

**D.   Statutory Tolling**

The limitations period ran for 29 days before it was tolled when Petitioner filed a motion on June 25, 1997 to correct the sentencing memorandum to delete the community-supervision provisions.

The limitations period ran from July 3, 1997, the date the trial court ruled on the motion, deleting the community supervision provision from his sentence. Thereafter,

---

runs until the end of the next day which is not a Saturday or a Sunday or a legal holiday, pursuant to Rule 6(a) of the Arizona Rules of Civil Procedure. Monday, May 26, 1997, was Memorial Day, thus the period ran until Tuesday, May 27, 1997.

- 11 -

the limitations period ran until it expired 336 days later, on Friday, June 5, 1998. Even if Petitioner's second motion to correct sentencing errors was considered a tolling event under §2244(d)(2), it was not filed until September 23, 1998, after the statute of limitations had already expired.

Neither the second motion, nor any of the other motions or Rule 32 petitions filed thereafter could toll the limitations period because it had already expired, neither could they restart the already expired 1-year limitations period. See *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001).

Petitioner's instant habeas, filed on September 1, 2006, was filed beyond the AEDPA's one-year statute of limitations, and is thus untimely.

The Magistrate Judge does not reach the Petitioner's or Respondents' alternate arguments on the merits of this case.

### III.   RECOMMENDATION

The Magistrate Judge recommends that the District Court DISMISS this action as untimely.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. A party may respond to another party's objection within ten days after being served with a copy thereof. Fed. R. Civ. P. 72(b). If objections are filed the parties should use the following case number:  **CV 06-473-TUC-DCB**

If objections are not timely filed, then the parties' right to de novo review by the District Court may be deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

DATED this 1st day of October, 2008.

_____
Bernardo P. Velasco
United States Magistrate Judge